996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kimberly Ann BOYD, Defendant-Appellant.
 No. 92-10261.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1993.*
Decided July 2, 1993.
 
 Before: CANBY, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kimberly Ann Boyd appeals her jury conviction for possession with intent to distribute and importation of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 952. Boyd contends that the district court erred by denying her motion to suppress the heroin obtained from her by United States Customs Officers following a border stop. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 Boyd contends that the Customs Inspectors lacked reasonable suspicion to undertake a warrantless search of her person. This contention lacks merit.
 
 
 4
 We review de novo the question of whether a border detention was based on reasonable suspicion. United States v. Oba, 978 F.2d 1123, 1128 (9th Cir.1992) (citing United States v. Handy, 788 F.2d 1419, 1420 (9th Cir.1986)). The customs area of international airports constitute the international border for purposes of the Fourth Amendment. United States v. Montoya de Hernandez, 473 U.S. 531, 537-38 (1985) (finding that customs desk at Los Angeles International Airport to be an international border). The constitutional standards which govern searches at international borders are less stringent than those which govern searches once inside the country. Id. at 538-39. Unlike most searches, a routine border search may be initiated without a warrant and absent the existence of articulable suspicion or probable cause. United States v. Ramsey, 431 U.S. 606, 616 (1977). Searches beyond the "routine" custom searches and inspections are justified if customs agents, considering all the facts surrounding the traveler and her trip, reasonably suspect that the traveler is smuggling contraband. Montoya de Hernandez, 473 U.S. at 541.
 
 
 5
 Under this standard, officials at the border must have a "particularized and objective basis for suspecting a particular person" of smuggling contraband. Id. The objective basis or reasonable suspicion must consist of "specific, articulable facts which, together with objective and reasonable inferences form a basis for suspecting that the particular person detained is engaged in criminal activity." See United States v. Rodriguez, 976 F.2d 592, 594 (9th Cir.1992) (citing United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989) (defining reasonable suspicion for investigatory stops)). In determining whether a detention is valid, we must look at the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989).
 
 
 6
 Here, on November 7, 1990, United States Customs Inspector Bernard Voight was working at the San Francisco International Airport. Based on an "alert" received from the Customs Service in Chicago, Inspector Voight was looking for a black female passenger arriving on Northwest Airlines flight 28 from Thailand. A written notification of the "alert" received approximately three days earlier indicated that Boyd had been acting suspiciously when she left Chicago for Thailand on November 4, 1990. The "alert" also indicated that she had two bodyguards with her at the airport in Chicago, and that her travel itinerary disclosed that she would only be in Thailand for a short time.
 
 
 7
 At approximately 9:20 a.m., while standing in the luggage area before the immigration checkpoint, Inspector Voight saw a black woman wearing a big bulky dress deplaning from Northwest flight 28. Inspector Voight contacted the woman he believed was Boyd and asked to see her passport and Customs Declaration form. Boyd's Declaration form indicated that she had been in Thailand on business. Inspector Voight asked Boyd the nature of her travel to Thailand. She stated that she was trying to get into the jewelry trade business. When he asked Boyd questions about the jewelry trade business, she was unable answer them or to produce any information regarding purchase orders or any business cards of people she had contacted.
 
 
 8
 Inspector Voight permitted Boyd to go through the immigration checkpoint and then directed her to a secondary search room where there were other inspectors. Once in the secondary search room, Boyd was informed that she would be given a pat-down search. Boyd then informed the inspectors that she was eight months pregnant. After speaking with a supervisor, Boyd consented to the pat-down search. Two female inspectors were called in to perform the search. The female inspectors felt "lumpy objects inconsistent with a human body" on Boyd's mid-section and crotch area. Boyd told the inspectors that the hard objects at her waist were the baby.
 
 
 9
 The female inspectors requested permission from their supervisor to perform a partial strip search. At that point, Boyd handed over two bags containing three pounds of heroin. One bag had been concealed in a girdle around her waist and the other had been concealed in her crotch area. After she gave the inspectors the heroin, they performed a full strip search and placed her under arrest.
 
 
 10
 The record indicates that Inspector Voight based his decision to detain and search Boyd upon the following facts: (1) he had received an "alert" from another Customs office in Chicago that Boyd had been accompanied by two bodyguards in Chicago when she left for Thailand and was acting suspiciously; (2) Boyd had travelled to Thailand, a known source of narcotics, for only a short time, consistent with work as a drug courier; (3) upon initial contact with Boyd, Voight noticed that she was wearing a bulky dress which lended itself to concealing objects; and (4) Boyd's answers to his questions regarding the jewelry business she was allegedly conducting in Thailand were inconsistent and evasive. The totality of these circumstances is sufficient to demonstrate a reasonable suspicion that Boyd was attempting to smuggle contraband. See Sokolow, 490 U.S. at 8; see also Oba, 978 F.2d at 1128.
 
 
 11
 The pat-down search of Boyd's person was based upon objective and articulable facts that she was engaged in smuggling contraband. See Rodriguez, 976 F.2d at 594. Furthermore, the discovery of the hard objects beneath Boyd's dress as a result of the pat-down search corroborated the inspectors' suspicions of smuggling. See Minnesota v. Dickerson, 61 U.S.L.W. 4544 (U.S. June 7, 1993) (seizure of nonthreatening contraband detected through the sense of touch during a protective pat-down search of the type permitted by Terry v. Ohio, 392 U.S. 1 (1968) is constitutional). The district court did not err by concluding that reasonable suspicion justified a more extensive search of Boyd's person. See id. The search was therefore reasonable under the Fourth Amendment. Id.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3